<u>Case Number 23-15759</u>

## UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

## PATRICIA MIROTH, et al.,

## Plaintiffs/Appellants,

## vs.

## COUNTY OF TRINITY, et al.,

## Defendants/Appellees.

On Appeal From:
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
Case No. 2:22-cv-00460-KJM-JDP
Honorable Kimberly J. Mueller

## APPELLEES' ANSWERING BRIEF

JOHN A. WHITESIDES, SBN 125611

ANGELO, KILDAY & KILDUFF, LLP

601 University Avenue, Suite 150

Sacramento, CA 95825

Telephone: (916) 564-6100

Facsimile: (916) 564-6263

Attorneys for Defendants/Appellees COUNTY OF TRINITY, LIZ HAMILTON, MARIO ANGELONE, NICOLE HAYS BRADFORD, ALLISON BALLARD, MEGAN SHOTLY-SCALZO, ANGELA BERGLUND, and ASHLEY POQUETTE

i

# TABLE OF CONTENTS

I.  APPELLATE JURISDICTION IS LACKING .....................................1

    A.  THE JUDGMENT DID NOT INCLUDE ALL PARTIES ........................1

    B.  THE OPTION IS TO DISMISS OR TO REMAND .................................4

II.  STATEMENT OF ISSUES...................................................5

III.  STANDARDS OF REVIEW .................................................5

IV.  INVOLVED CONSTITUTIONAL PROVISIONS..............................8

V.  COMBINED STATEMENT OF FACTS AND OF THE CASE.........8

    A.  THE INITIAL COMPLAINT...................................................9

    B.  THE FIRST AMENDED COMPLAINT...................................................14

    C.  THE FIRST MOTION TO DISMISS .....................................14

    D.  THE SECOND AMENDED COMPLAINT............................................16

    E.  THE SECOND MOTION TO DISMISS................................................20

        1.  The Briefing And Exhibits.................................................20

        2.  The Dismissal Order .....................................................22

    F.  THE APPEAL.....................................................24

VI.  SUMMARY OF ARGUMENT....................................................25

VII.  THE INCOMPLETE RECORD WARRANTS AFFIRMANCE.......27

VIII. THE OPENING BRIEF FACIALLY FAILS TO SHOW
REVERSIBLE ERROR ........................................................................29

    A.    APPELLANTS ATTACK THE DISTRICT COURT'S REASONING ........29

    B.    COLLATERAL ESTOPPEL HERE FITS ...............................................31

        1.    Governing Legal Principles ................................................31

        2.    Issue Preclusion Serves As An Alternative Ground For
Affirmance ......................................................................34

    C.    APPELLANTS FAILED TO PRESERVE COLLATERAL ESTOPPEL AS
AN APPEAL GROUND.........................................................................35

        1.    Forfeiture Below ..................................................................35

        2.    Forfeiture On Appeal ..........................................................35

IX.    ROOKER-FELDMAN APPLIES TO INTRINSIC FRAUD.............36

X.    NO AMENDMENT WAS OR IS PROPOSED ...................................38

    A.    APPELLANTS WAIVE THIS APPELLATE GROUND...........................38

    B.    THE REQUEST WAS IMPROPERLY GENERIC...................................39

XI.    CONCLUSION..........................................................................39

# TABLE OF AUTHORITIES

<u>C</u>ASES

*A.M. v. P.M.*

    2020 Cal. App. Unpub. LEXIS 2285, at *1 ................................... 36

*Allen v. McCurry*

    449 U.S. 90 (1980) .................................................................. 32, 33

*Balla v. Idaho State Bd. of Corr.*

    869 F.2d 461 (9th Cir. 1989) ........................................................ 1

*Bolker v. Commissioner*

    760 F.2d 1039 (9th Cir. 1985) ...................................................... 7

*Carlin v. DairyAmerica, Inc.*

    705 F.3d 856 (9th Cir. 2013) ........................................................ 5

*Castro v. Lewis*

    777 F. Appx. 401 (11th Cir. 2019) .............................................. 37

*Cooper v. Pickett*

    137 F.3d 616 (9th Cir. 1997) ........................................................ 1

*Dodd v. Hood River County*

    136 F.3d 1219 (9th Cir. 1998) .................................................... 32

iv

*Edwards v. Marin Park, Inc.*

356 F.3d 1058 (9th Cir. 2004) ...........................................................6

*Everett v. Perez (In re Perez)*

30 F.3d 1209 (9th Cir. 1994) ...........................................................28

*Grayson O Co. v. Agadir Int'l LLC*

856 F.3d 307 (4th Cir. 2017) ...........................................................6

*Green v. Ancora-Citronelle Corp.*

577 F.2d 1380 (9th Cir. 1978) .........................................................37

*Kougasian v. TMSL, Inc.*

359 F.3d 1136 (9th Cir. 2004) .........................................................37

*Lakedreams v. Taylor*

932 F.2d 1103 (5th Cir. 1991) .........................................................28

*Lucido v. Superior Court*

51 Cal.3d 335 (1990)........................................................................33

*Martinez-Serrano v. I.N.S.*

94 F.3d 1256 (9th Cir. 1996) ...........................................................6

*Migra v. Warren City School Dist. Bd. of Education*

465 U.S. 75 (1984) ...........................................................................32

*Murray v. Alaska Airlines, Inc.*

    522 F.3d 920 (9th Cir. 2008) .......................................................... 33

*NYSA Series Tr. v. Dessein*

    631 F. Appx. 54 (2d Cir. 2015) .................................................... 3, 4

*Padgett v. Wright*

    587 F.3d 983 (9th Cir. 2009) .......................................................... 6

*People v. Sims*

    32 Cal.3d 468 (1982) ...................................................................... 33

*Robi v. Five Platters, Inc.*

    838 F.2d 318 (9th Cir. 1988) .......................................................... 32

*Romoland Sch. Dist. v. Inland Empire Energy Ctr., LLC*

    548 F.3d 738 (9th Cir. 2008) ............................................................ 1

*Salameh v. Tarsadia Hotel*

    726 F.3d 1124 (9th Cir. 2013) ................................................. 5, 6, 39

*Serrano v. Francis*

    345 F.3d 1071 (9th Cir. 2003) .......................................................... 8

*United States v. Davis*

    60 F.3d 1479 (10th Cir. 1995) ........................................................ 28

*Valentine v. BAC Home Loans Servicing, L.P.*

635 F. Appx. 753 (11th Cir. 2015)...................................................38

*Walsh v. Nevada Dep't of Human Res.*

471 F.3d 1033 (9th Cir. 2006) ..........................................................7

*Whittaker Corp. v. Execuair Corp.*

953 F.2d 510 (9th Cir. 1992) .............................................................6

*Williams v. Woodford*

306 F.3d 665 (9th Cir.2002) ..............................................................6

*Wojtas v. Capital Guardian Tr. Co.*

477 F.3d 924 (7th Cir. 2007) .............................................................7

*Wood v. McEwen*

644 F.2d 797 (9th Cir. 1981) ...........................................................37

*Yagman v. Garcetti*

852 F.3d 859 (9th Cir. 2017) .............................................................7

vii

# I. APPELLATE JURISDICTION IS LACKING

Although County Defendants agree the district court had original subject matter jurisdiction, the opening brief omits key procedural information bearing on appellate jurisdiction.

## A.   THE JUDGMENT DID NOT INCLUDE ALL PARTIES

Plaintiffs and Appellants Patricia and Stanley Miroth assert appellate jurisdiction exists under 28 U.S.C. § 1291, which requires a final judgment, i.e., one that resolves all issues/claims as to *all parties*.  *Romoland Sch. Dist. v. Inland Empire Energy Ctr., LLC,* 548 F.3d 738, 747 (9th Cir. 2008); *Balla v. Idaho State Bd. of Corr.*, 869 F.2d 461, 464 (9th Cir. 1989) ("[b]ecause it did not resolve all the issues as to all the parties on the merits, leaving nothing to be done but to execute the judgment, this order was not a 'final' order under 28 U.S.C. § 1291").  A limited exception exists where the party(ies) remaining unresolved in the district court was never served with process.  *Cooper v. Pickett*, 137 F.3d 616, 622 (9th Cir. 1997).

1

Appellants assert "[t]he District Court granted Defendants' motion to dismiss as to all claims and all parties," which correctly reflects what occurred as to the *moving* County Defendants. See OB-1.[1] But, prior to the subject dismissal order, the clerk entered the default of co-defendant Debbie Carter, who is the sole defendant as to the defamation claim, and no award thereon had yet occurred. 3-ER-411. See 2-ER-158-160. Rather, the Miroths had filed a motion for entry of judgment on the default (3-ER-410), which the district court subsequently acknowledged in its calendaring (*ibid*), yet the district court's dismissal order entered just over a month later neither mentioned Carter's default, nor made an express determination under F.R.C.P. Rule 54(b) that delaying entry of judgment due to Carter

---

[1] Citations to Appellants' opening brief will be in the format "OB-x."

2

would be unjust.[2]  1-ER-3-12.  The judgment entered the same day was likewise silent.  1-ER-2.

The Miroths failed to communicate to the district court about this apparent judicial oversight before filing their notice of appeal.   Thus, notwithstanding the district court's direction for the clerk to "close" the case, under Rule 54(b) the action remains pending as against Carter, precluding appellate jurisdiction via § 1291.  See e.g., *NYSA Series Tr. v. Dessein*, 631 F. Appx. 54, 55 (2d Cir. 2015) (finding lack of jurisdiction, despite district court's closure of case, where one non-appellee defendant had never appeared, such that those claims remained pending, and the district court did not certify entry of partial final judgment).

---

[2] It does not appear the district court intended its refusal to exercise supplemental jurisdiction over the "remaining" state law claims to also encompass the defamation claim against Carter.  1-ER-12.  The SAC's paragraphs there referenced (169 and 175) encompass claims solely against County Defendants, and not the defamation claim.  2-ER-156-158.

3

**B.    THE OPTION IS TO DISMISS OR TO REMAND**

The opening brief fails to address Carter.[3]  Also, the Miroths advance no argument as to interlocutory appellate jurisdiction under § 1292(b), and the record confirms the absence of both corresponding language in the dismissal order and/or a timely request by the Miroths for discretionary review by this Court.  Accordingly, this Court should either (a) dismiss the appeal as premature or, alternatively, (b) remand the case to the district court for either completion of the case as to Carter, or certification under Rule 54(b) of the order dismissing County Defendants, with a time-limited right for reinstatement of this appeal thereafter.  See e.g., *NYSA Series Tr. v. Dessein*, 631 F. Appx. at 57.

The following assumes appellate jurisdiction exists at the time this appeal's merits are considered, either in its current form or as may be later reinstated without further

---

[3] This silence surprises Appellees because their counsel expressed this jurisdictional problem to Appellants' counsel prior to the onset of appellate briefing.

4

briefing.

## II.  STATEMENT OF ISSUES

a.  Did the Miroths doom their appeal by deliberately omitting from their excerpts of record the exhibits relied on by County Defendants and the district court?

b.  Did the Miroths preserve below and on appeal their right to contest issue preclusion?

c.  Does the Rooker-Feldman doctrine except intrinsic fraud such as perjury during a contested matter?

## III.  STANDARDS OF REVIEW

The Miroths correctly acknowledge that, although this Court reviews *de novo* a dismissal upon granting of a Rule 12(b)(6) motion (*Carlin v. DairyAmerica, Inc.*, 705 F.3d 856, 866 (9th Cir. 2013)), a district court's decision to dismiss a complaint without leave to amend is reviewed for abuse of discretion.  *Salameh v. Tarsadia Hotel*, 726 F.3d 1124, 1129 (9th Cir. 2013).  Moreover, the district court's discretion is "particularly broad" where the plaintiff has previously

amended.  *Id.* at 1133.

Even *de novo* review has limits.  To preserve issues for appellate determination, a party must (a) timely raise the matter in the district court and (b) present that matter in its opening brief on appeal.  *Padgett v. Wright*, 587 F.3d 983, 986 at n. 1 (9th Cir. 2009); *Grayson O Co. v. Agadir Int'l LLC*, 856 F.3d 307, 316 (4th Cir. 2017) ("[a] party waives an argument by failing to present it in its opening brief"); *Whittaker Corp. v. Execuair Corp.*, 953 F.2d 510, 515 (9th Cir. 1992) ("[a]s a general rule, an appellate court will not hear an issue raised for the first time on appeal").  A fleeting reference does not suffice; this circuit normally entertains only those issues conspicuously and substantially presented in the opening brief.  *Edwards v. Marin Park, Inc.*, 356 F.3d 1058, 1066 (9th Cir. 2004) ("we look at whether the opening brief contains the appellant's contentions as well as citations to authorities and the record"), quoting *Williams v. Woodford*, 306 F.3d 665, 684 n. 5 (9th Cir.2002); *Martinez-Serrano v. I.N.S.*, 94 F.3d 1256, 1259 (9th Cir. 1996) (issues

6

must be clearly raised in opening brief and supported by argument).

Furthermore, assignments of error must have been preserved by timely assertion in the district court; the failure to advance an issue when the opportunity existed below normally forfeits that matter as a ground for reversal. *Bolker v. Commissioner*, 760 F.2d 1039, 1042 (9th Cir. 1985).[4]  In the context of a Rule 12 motion to dismiss, a plaintiff whose opposition brief does not present argument on an expressed defense effectively abandons the associated claim.  *Walsh v. Nevada Dep't of Human Res.*, 471 F.3d 1033, 1037 (9th Cir. 2006); *Wojtas v. Capital Guardian Tr. Co.*, 477 F.3d 924, 926 (7th Cir. 2007) ([t]he Wojtases' failure to offer any opposition to Capital's statute of limitations argument constituted a waiver").  *See Yagman v. Garcetti*, 852 F.3d 859, 865 at n. 1 (9th Cir. 2017).

---

[4] This circuit indulges newly-raised issues where necessary to prevent a miscarriage of justice, if prompted by a change in the law, or if they are pure questions of law independent of the factual record.  *Ibid*.  None of these exceptions even arguably here applies.

7

Because this Court reviews the district court's decision, rather than its reasoning, it may affirm on any ground shown by the record, whether considered by the district court or not. *Serrano v. Francis*, 345 F.3d 1071, 1076 (9th Cir. 2003).

## IV.  INVOLVED CONSTITUTIONAL PROVISIONS

The Fourteenth Amendment says: "[n]o State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws."

## V.  COMBINED STATEMENT OF FACTS AND OF THE CASE

Since (a) the appeal stems from a Rule 12(b)(6) dismissal and (b) Appellants' truncated record excludes the juvenile dependency proceedings, a combined factual and

8

procedural history seems efficient.[5]

## A.    THE INITIAL COMPLAINT

The Miroths' first pleading identified as defendants County, its Child Welfare Services department's director, Liz Hamilton, program manager Mario Angelone, social worker supervisor Nicole Hays Bradford, social workers Allison Ballard, Megan Sholty-Scalzo, Angela Berglund, and Ashley Poquette, an attorney, Verlin Johnson, misidentified as representing the superior court and thus as affiliated with County[6], and private citizen/grandparent Debbie Carter.  3-ER-335-338, 353.

Distilled from its inordinate evidentiary details and numerous legal conclusions/arguments, the complaint's historical averments may be summarized as follows:

---

[5] The excerpts of record improperly include all the motions' legal memoranda.  In accordance with F.R.A.P. Rule 30.2(a)(2) and Circuit Rule 30-1.4 (Advisory Note), County Defendants will cite to such documents solely regarding the Miroths' waiver of legal arguments and/or the deficient state of the existing record as to exhibits.

[6] Later, Ms. Miroth acknowledged the superior's court's appointment of Johnson to represent her.  3-ER-351.

9

(i) County Defendants unnecessarily procured a warrant for removal of the Miroths' daughter, A.M., due to the presence in the household of a registered sex offender and multiple domestic violence incidents (3-ER-339-348);

(ii) after A.M.'s removal, several social workers permitted Ms. Miroth mere supervised visitation with A.M., rather than returning her to the family home, and misrepresented in the detention hearing report that five other children of Ms. Miroth were previously removed due to her persistent drug use and consequential parental delinquency when in fact Ms. Miroth many years earlier voluntarily relinquished parental rights to four of the five, and had not abused drugs (3-ER-348-349);

(iii) the dependency petition falsely opined that Ms. Miroth had been unwilling to disassociate from various abusive men; County Defendants failed to make reasonable efforts to avoid removal, and misstated, in arguing against reunification between the Miroths and A.M., that Ms. Miroth had failed to progress in providing a safe home environment

10

(3-ER-349-351);

(iv) the social workers, in the May 24, 2018 jurisdictional report, failed to give "due weight" to the Sheriff's approval of the sex offender's presence in the home (3-ER-351);

(v) attorney Johnson failed to attempt rebuttal of the drug use allegations or to offer evidence supporting Ms. Miroth's parental fitness (*ibid.*);

(vi) the social workers strove to defeat reunification and so did not offer the Miroths rehabilitative services or consider placement with other relatives but rather were unduly swayed by grandparent Carter (3-ER-352-353);

(vii) Ms. Miroth's counselor/therapist supported reunification (3-ER-354-355);

(viii) the social workers failed to give proper weight to documentation of Ms. Miroth's rehabilitative progress (3-ER-355);

(ix) S.M. was born on August 18, 2018 (3-ER-356);

(x) Ms. Miroth then tested negative for controlled

11

substances, yet the social workers unnecessarily removed S.M. from her custody to foster care without consideration of a different relative placement (3-ER-356-360);

(xi) two weeks earlier, Carter received custody of A.M., resulting in decreased visitation for Ms. Miroth (3-ER-356-357);

(xii) Poquette signed the dependency petition and the detention report regarding S.M. despite lacking personal knowledge of their factual averments (3-ER-360);

(xiii) attorney Johnson again failed to submit evidence of Ms. Miroth's rehabilitative progress (3-ER-360-361);

(xiv) the social workers continued to assert in court outdated and misleading aspects of Ms. Miroth's parental history (3-ER-361-362);

(xv) the social workers strove to diminish Ms. Miroth's visitation with S.M. and did diminish her visitation with A.M. (3-ER-362-363);

(xvi) Ballard and Angelone falsely accused Ms. Miroth of stalking Ballard, though she had alibi witnesses Johnson

chose not to use (3-ER-364);

(xvii) Ms. Miroth's appeal of the juvenile court's termination of her parental rights failed due to the incomplete factual record (3-ER-365);

(xviii) the County defendants never timely served Ms. Miroth with process in the dependence proceeding (3-ER-365); and

(xix) A.M. and S.M. were adopted in October of 2020 (3-ER-366).

Based on these averments, the Miroths sought, under the constitutional right to intimate relationship/familial association,[7] as well as the First Amendment right to freedom of speech, plus myriad state law theories of liability, damages, injunctive relief as to social worker training, and a judgment vacating the California juvenile judgment and reinstating "their parental rights as to A.M. and S.M.," and

---

[7] The complaint identified the associational right's sources as the Fourteenth and Fourth Amendments. 3-ER-368, 370. As neither A.M. nor S.M. are plaintiffs, the Miroths later abandoned the Fourth Amendment theory.

13

as otherwise needed to achieve reunification. 3-ER-392-394, 398, 401-402. See *id.* at 333-334 (expressly arguing that such relief is available due to extrinsic fraud on the state court under circumstances not there presented or decided).

## B. THE FIRST AMENDED COMPLAINT

Before County Defendants filed a responsive pleading, the Miroths amended their complaint. 3-ER-255. See 3-ER-414. The first amended complaint substantively mirrored its predecessor, merely deleting deceased attorney Johnson as a defendant, and adding factual verifications by the Miroths. 3-ER-255, 277, 327-328. However, the averments about Johnson's inadequate representation remained. See e.g., 3-ER-277-278.

## C. THE FIRST MOTION TO DISMISS

County Defendants moved under Rule 12(b)(6) to dismiss the first amended complaint. 2-ER-214. To support a collateral estoppel defense, the motion heavily relied on the record of the juvenile dependency proceedings, of which it requested judicial notice. 2-ER-217-218, 248-253. County

14

Defendants also requested these records be sealed, which relief the district court granted. 2-ER-212-213.

The Miroths' opposition objected to the juvenile court exhibits as improper extrinsic evidence that, if considered, would convert the motion into one for summary judgment, despite the lack of opportunity for discovery. 2-ER-179-180. County Defendants' reply rebutted the characterization of the motion as for summary judgment. 2-ER-163-164.

After hearing oral argument on the motion (3-ER-412), the district court dismissed without leave to amend the First Amendment violation and three state law claims, and dismissed with leave to amend the balance. *Ibid.* Judge Mueller's written order explained the decision as follows:

(a) state court records are generally subject to judicial notice, plus here the complaint "extensively" referred to those same proceedings (1-ER-15);

(b) the Miroths conceded the First Amendment and three state law claims (1-ER-20);

(c) the family relationship deprivation claims

15

constituted a *de facto* appeal of the juvenile court's judgment both by seeking relief therefrom and by functionally challenging the children's removal and detention (1-ER-20-22);

(d) the juvenile court records, as well as the first amended complaint itself, confirm the Miroths had opportunities to rebut County Defendants' alleged misrepresentations and to supply the juvenile court with information about her parental fitness, such that any fraud was intrinsic to issues actually litigated, rather than extrinsic to the dependency proceeding (1-ER-22-25); and

(e) leave to amend was proper given the possibility the Miroths could allege facts showing "it was the defendants who prevented the plaintiffs from litigating their claims in state court" (1-ER-23-24).

## D.   THE SECOND AMENDED COMPLAINT

The Second Amended Complaint (SAC) deviated from its immediate predecessor as follows:

(a) deleted the general legal argument about the

viability of the federal constitutional claim against County of Trinity (2-ER-97, 3-ER-257-258);

(b) deleted legal argument about whether the suit constituted a *de facto* appeal of a state court judgment (2-ER-97-98, 3-ER-259-260);

(c) deleted factual averments about events prior to February of 2018 (2-ER-103, 3-ER-265-266);

(d) added more detail about prior domestic violence incidents at the Miroths' home (2-ER-110);

(e) added arguments about (i) why A.M.'s removal and detention were truly caused by the social workers ignoring Ms. Miroth, and (ii) the dependency petition's facial inadequacy (2-ER-112-113);

(f) added averments about Ms. Miroth's testimony at the detention hearing, including *express citations* to the County Defendants' juvenile court exhibits (2-ER-113);

(g) added averments about the representational failures of the Miroths' dependency attorneys, again with express citations to the County Defendants' juvenile court

17

exhibits (2-ER-115-116);

(h) changed the description of the jurisdictional report's wrongful omission, from prior approval by the sheriff's detective of the sex offender's presence in the home, to disclosure of various facts showing Ms. Miroth's parental fitness (2-ER-119);

(i) deleted the detailed description of Ms. Miroth's therapist's letter to the juvenile court (2-ER-122-123);

(j) added more averments about the representational acts and omissions of the Miroths' dependency attorneys, yet again accompanied by citations to the County Defendants' juvenile court exhibits (2-ER-124-125);

(k) added averments that the dependency petition for S.M. wrongfully cited Ms. Miroth's parenting circumstances from fourteen years earlier (2-ER-129);

(l) added facts about Ms. Miroth's representational situation at S.M.'s detention hearing, again citing the County Defendants' juvenile court exhibits (2-ER-130);

(m) added argument about County's position on the

18

subject of reunification at S.M.'s detention hearing (2-ER-130-131);

(n) added argument and factual allegations pertaining to County Defendants' failure, prior to A.M.'s dispositional hearing, to offer parental services to Mr. Miroth, as well as regarding related testimony at that hearing by the Miroths, once more citing County Defendants' juvenile court exhibits (2-ER-131-132);

(o) added paragraphs about the number of (i) different dependency attorneys for the Miroths and (ii) different judges involved (2-ER-132-133);

(p) added a paragraph about testimony and counsel's argument showing Ms. Miroth possessed insight to her past mistakes, again citing the County Defendants' juvenile court exhibits (2-ER-135);

(q) deleted all averments regarding: (i) accusations Ms. Miroth stalked a social worker; (ii) incompetent/unethical acts by attorney Johnson in March of 2019; and (iii) Ms. Miroth's communications with the district attorney; while

19

adding general argument about the Miroths' lack of legal sophistication (2-ER-136-137); and

(r) modified the prayer to omit any reference to relief from the state court judgments (2-ER-161).

The SAC also noted various claims for relief as dismissed (2-ER-153, 160-161), leaving operational against County Defendants the Fourteenth Amendment family relationship deprivation claims regarding the children's removals and detentions (First-Third), the related Monell claim against County (Fourth), and the tort claims of fraud and infliction of emotional distress (Eighth-Tenth). 2-ER-153-159.

## E. THE SECOND MOTION TO DISMISS

### 1. The Briefing And Exhibits

County Defendants renewed their Rule 12(b)(6) attack, relying again on the dependency proceedings records. 2-ER-68-72. Included among the asserted defenses were the *Rooker-Feldman* doctrine and collateral estoppel/issue preclusion. 2-ER-71-72.

The Miroths' opposition brief thoroughly argued whether *Rooker-Feldman* still pertained, but fell silent about collateral estoppel. 2-ER-44-65. Indeed, the opposition wholly failed to discuss or cite the juvenile court exhibits. *Ibid.* Nor did the Miroths offer any argument or authority specific to their California tort claims. *Ibid.* Although the Miroths requested leave to amend, they did so generically, without proposing a curative averment. 2-ER-65-66.

County Defendants' reply highlighted the opposition's silent forfeitures regarding collateral estoppel (2-ER-40) and the tort claims (2-ER-42).

Without first obtaining leave of court, the Miroths filed a sur-reply brief, which, among other things, newly argued the collateral estoppel question, though still without referencing the juvenile court records (3-ER-411; 2-ER-29-30), but did not attempt to salvage the tort claims (2-ER-27-33).[8]

---

[8] The district court found the sur-reply improper but exercised its discretion to nonetheless consider it. 1-ER-7.

21

## 2. The Dismissal Order

The district court granted County Defendants' motion. 1-ER-3. After initially noting that the SAC's factual averments were "nearly identical" to those previously pled (1-ER-4), the district court judicially noticed the dependency proceeding exhibits, repeatedly cited them while summarizing that history (1-ER-4-5), and cataloged both the various judicial deception allegations, as well as the inadequate representation averments (1-ER-5-6). Judge Mueller then conducted a *Rooker-Feldman* analysis, clarifying that said doctrine does not preclude a claim of extrinsic fraud by the defendant in a state court proceeding, and defining extrinsic fraud as party misconduct that prevented the federal plaintiff from presenting his claim in that proceeding. The order contrasted extrinsic fraud with intrinsic fraud, i.e., misconduct "going to the very heart of the contested issues." 1-ER-7-8. The district court also identified the second *Rooker-Feldman* analytical prong as whether the federal suit seeks relief from state court

22

orders/judgments.  1-ER-8.

Acknowledging that the SAC deleted all its predecessors' explicit references to relief from the dependency orders/judgments, the district court found that, especially given (1) the absence of new historical averments regarding County Defendants' judicial deceptions, and (2) the Miroths' express abandonment of an extrinsic fraud theory, they still essentially claimed the juvenile court erroneously authorized the children's removal and detention. 1-ER-8-9.  In this regard, the district court highlighted various portions of the dependency proceedings exhibits where the Miroths actively contested the various misrepresentations/omissions by the social workers, and concluded "[h]ere, plaintiffs are in essence arguing the state court erred by incorrectly weighing the evidence before it. In order for the court to find for plaintiffs, the court would need to conclude the state court's decisions were wrong, which it

cannot do." 1-ER-10.  See 1-ER-11.[9]

Finally, the district court also found that, despite the SAC's limitation of remedies to damages, the pleading's gist was that their injuries flowed from the erroneous state court decisions regarding the children, which made it impossible for them to be awarded damages without an implicit finding the juvenile court made the wrong decisions.  1-ER-11-12.

## F.   THE APPEAL

The Miroths' opening brief noted their unsuccessful objection during the first motion to dismiss to judicial notice of the various records from the dependency proceedings. OB-20, 26.   Despite (a) the SAC's repeated citation to those same documents, (b) the lack of such an objection regarding the second motion to dismiss, and (c) the district court's

---

[9] "Here, all of the alleged fraud, misrepresentation and omissions -- regarding the provision of services, drug use, counseling, removal of children over fourteen years ago, progress made by plaintiffs -- were matters brought to the state court's attention as explained above, or were matters within plaintiffs' knowledge.  * * * Thus, they had the opportunity to present their claims during the state court proceedings and challenge or refute defendants' alleged misrepresentations."

express reliance on those exhibits in reaching its dismissal decision, the opening brief expressly asks "this Court to decide this matter on the allegations of the Second Complaint alone, without reference to the extraneous matters outside the pleadings." OB-26. The opening brief neither alternatively describes, nor analyzes, these records, and the excerpts of record completely omit them. See 2-ER-248-252; 3-ER-413.

Based on these intentional exclusions, County Defendants moved for summary affirmance. ECF # 22. The Miroths opposed the motion, describing the omission from their excerpts of record as "an oversight" and requesting leave to thus supplement the record. ECF # 24, pp. 1-5.

The motions panel denied summary affirmance and gave the Miroths until January 16, 2024 to supplement the record. ECF #26. Tellingly, no such supplementation occurred.

## VI. SUMMARY OF ARGUMENT

Should appellate jurisdiction ever arise, neither the

opening brief, nor the excerpts of record, serve to show error. The Miroths' excerpts of record deliberately exclude all the dependency proceeding exhibits on which County Defendants and the district court relied regarding dismissal. This foolish tactic *per se* dooms the appeal by preventing this Court from reviewing the findings that the Miroths in state court unsuccessfully contested the alleged deceptions.

Moreover, by characterizing the substantive question as solely concerning the *Rooker-Feldman* doctrine, the Miroths miss the forest for a tree. The district court's decision turned on various events in the underlying juvenile dependency proceeding on which the Miroths base their complaint. Those same events also supported a determination of collateral estoppel and/or lack of causation in fact, and the motions to dismiss so asserted. Thus the opening brief's silence concerning collateral estoppel serves as a forfeiture and independently warrants affirmance of the dismissal.

What argument the opening brief does present – the

*Rooker-Feldman* doctrine – falls short because the Miroths expressly abandoned their extrinsic fraud claim, and the doctrine pertains to alleged intrinsic fraud like perjury and misrepresentation concerning contested matters.

## VII. THE INCOMPLETE RECORD WARRANTS AFFIRMANCE

The procedural history chronicled above confirms the dependency proceedings records as critically important to the dismissal: County Defendants' motions heavily relied on them; the SAC expressly and repeatedly referenced them; and the district court's order cited them as a key historical basis for its determination the Miroths had ample opportunity to supply exculpatory facts and to correct misrepresentations.  Yet, the Miroths' excerpts of record completely omit the dependency records, even after receipt of leave to so supplement.  The refusal to supplement, coupled with the opening brief's request those exhibits not be considered, belies the Miroths' plea of inadvertence as to their omission.

As the appellant bears the burden of demonstrating

error by furnishing a record sufficient for appellate review, failure to supply an adequate record can by itself support affirmance. *Everett v. Perez (In re Perez)*, 30 F.3d 1209, 1217-18 (9th Cir. 1994) ("[t]he record here thus leaves much to be desired, and we have held that failure to present a sufficient record can itself serve as a basis for affirmance"); *United States v. Davis*, 60 F.3d 1479, 1482 n.1 (10th Cir. 1995). The omission of pertinent exhibits qualifies as inadequacy. *Lakedreams v. Taylor*, 932 F.2d 1103, 1109 (5th Cir. 1991) ("[b]ecause Taylor has failed to include the exhibits with the record on appeal, this Court is unable to find that the district court's determination concerning copying was clearly erroneous"). See Ninth Circuit Rule 10-2(b).

Here, affirmance surpasses being simply allowable, and reaches the point of a just ending. This Court confronts not a *pro se* litigant who ignorantly failed to include several items, but rather parties represented by counsel who undeniably chose to omit *all* the exhibits, and maintained

the exclusion tactic even after direct challenge and receipt of a chance to cure that deficiency the Miroths painted as an "oversight."

## VIII. THE OPENING BRIEF FACIALLY FAILS TO SHOW REVERSIBLE ERROR

The Miroths' avoidance of the juvenile court exhibits also analytically cripples their opening brief, which singularly debates the *Rooker-Feldman* doctrine's applicability to this suit. The ultimate issue isn't solely *Rooker-Feldman*, but rather is whether the district court correctly determined that the Miroths could have challenged, and in fact did contest, in the dependency proceedings the various misrepresentations and omissions they plead. By wholly ignoring this dispositive inquiry, the opening brief categorically fails to show the district court erred in dismissing County Defendants.

### A. APPELLANTS ATTACK THE DISTRICT COURT'S REASONING

As stated above, at Section III, this Court will affirm if it determines the district court reached the correct result,

regardless of the trial judge's reasoning. Judge Mueller's dismissal order essentially states that the SAC and the juvenile court records conjunctively confirm that the Miroths had the ability to both supply the juvenile court with missing information and to rebut misinformation in all pertinent respects. The opening brief does not attempt a contrary showing, nor could it have. The SAC expressly avers the Miroths' dependency attorneys repeatedly addressed, or failed to address, important aspects of removal, detention, and/or reunification. See e.g., 2-ER-115-116, 120, 124-125, 130, 132-133, 135. The SAC also acknowledges that the Miroths testified at A.M.'s dispositional hearing. 2-ER-131-132. Moreover, nowhere does the SAC describe a single instance where any County Defendant prevented the Miroths from submitting or rebutting evidence in the juvenile court as to either child. Thus the district court's findings concerning specific events in the dependency proceedings remain wholly unchallenged.

Indeed, the district court need not have stopped at the

*Rooker-Feldman* doctrine, though its jurisdictional impact explains why Judge Mueller first considered it; she could have alternatively applied issue preclusion/collateral estoppel, or simply found a lack of causation in fact between the social workers' alleged misdeeds and the juvenile court's decisions.[10] All of those analytical options flow from Judge Mueller's finding the record shows the Miroths did supply, or had the ability to supply, the juvenile court with the parental fitness evidence they allege was true.

## B. COLLATERAL ESTOPPEL HERE FITS

### 1. Governing Legal Principles

Pursuant to 28 U.S.C. § 1738 and the Full Faith & Credit Clause of the U.S. Constitution (Article IV, Section 1),

---

[10] For example, regarding reunification, the California court of appeal's opinion placed great weight on the expert opinion of a clinical psychologist (Dr. McKellar) who assessed A.M. "after mother's attorney referred mother for a bonding evaluation," and "concluded that severance of the bond between mother and A.M. would not have a detrimental impact on A.M." *A.M. v. P.M.*, 2020 Cal. App. Unpub. LEXIS 2285, at *8-9 (2020). Yet, the SAC nowhere mentions Dr. McKellar, much less alleges County Defendants somehow tainted his opinion.

federal courts must give the same preclusive effect to a state court judgment as it would receive under the law of the state where the judgment issued. *Migra v. Warren City School Dist. Bd. of Education*, 465 U.S. 75, 81 (1984); *Dodd v. Hood River County*, 136 F.3d 1219, 1224-1225 (9th Cir. 1998). The full faith and credit requirement includes cases brought under 42 U.S.C. § 1983. *Migra*, 465 U.S. at 82; *Robi v. Five Platters, Inc.*, 838 F.2d 318, 322 (9th Cir. 1988). Moreover, the preclusive effect to be enforced by federal courts includes issue preclusion (collateral estoppel). Collateral estoppel is a judicially-favored doctrine and the only general limitation on its use is that the party against whom the prior decision is asserted must then have had a full and fair opportunity to litigate that issue. *Allen v. McCurry*, 449 U.S. 90, 94-95 (1980).

California courts apply collateral estoppel/issue preclusion where: (1) the issue was necessarily decided in a prior proceeding after being actually litigated; (2) the issue decided is identical to the issue sought to be litigated; (3) the

prior proceeding resulted in a final decision on the merits; and (4) the party against whom collateral estoppel is asserted was a party, or in privity with a party, to the prior proceeding. *Lucido v. Superior Court*, 51 Cal.3d 335, 341 (1990). See *Murray v. Alaska Airlines, Inc.*, 522 F.3d 920, 923 at fn. 3 (9th Cir. 2008) (citing *Lucido*).

As just noted, collateral estoppel requires that the party to be estopped had the opportunity to contest the merits, not whether he availed himself of that chance, or made every possible objection/argument, or submitted all evidence available. *Allen v. McCurry*, 449 U.S. at 94-95 (preclusion applies so long as the party had a full and fair opportunity to litigate the issue); *Lucido v. Superior Court*, 51 Cal.3d 335, 341 at n. 2 (1990) ("the important question, at least for threshold purposes, is whether the People had the opportunity to present their entire case at the revocation hearing, not whether they availed themselves of the opportunity"); *People v. Sims*, 32 Cal.3d 468, 481 (1982) ("[t]he failure of a litigant to introduce relevant available

33

evidence on an issue does not necessarily defeat a plea of collateral estoppel").

### 2. Issue Preclusion Serves As An Alternative Ground For Affirmance

On its face, the truncated record supports collateral estoppel against the Miroths. The SAC itself confirms the Miroths were parties to the dependency proceedings, which directly involved and finally decided the propriety of the children's removals, detentions, and ultimate placements into adoption (Eighth). Indeed, they unsuccessfully appealed that judgment. As discussed above, the SAC admits the Miroths had opportunities, whether pursued or not, to contest removal and detention, and to obtain reunification. And the SAC expressly challenges the children's removals (First and Second claims), detentions (Third claim), and lack of reunifications with Plaintiffs (Eighth). 2-ER-139-148, 154-156.

///

34

### C. APPELLANTS FAILED TO PRESERVE COLLATERAL ESTOPPEL AS AN APPEAL GROUND

#### 1. Forfeiture Below

County Defendants recited above the Miroths' opposition's silence concerning the issue preclusion defense raised by the motion to dismiss the SAC. Although the Miroths belatedly tried to refute collateral estoppel in their sur-reply, the district court's general tolerance of that filing did not expressly allow new arguments (i.e., those not first raised in the opposition) versus pure rebuttal. As the sur-reply addressed a variety of issues, the district court's general allowance of it did not implicitly condone the untimely collateral estoppel discussion.

Because the Miroths failed to timely contest collateral estoppel in the district court, they may not do so here.

#### 2. Forfeiture On Appeal

Assuming the sur-reply sufficed to preserve collateral estoppel as a contested matter, the opening brief waived the right of appeal by its complete silence in that regard. That silence is inexcusable given (a) the prominence County

35

Defendants placed on that defense below, and (b) the district court's citation to *A.M. v. P.M.*, 2020 Cal. App. Unpub. LEXIS 2285, at \*1 – Ms. Miroth's unsuccessful appeal to the State of California's Third Appellate District concerning "the juvenile court's orders terminating her parental rights," wherein the appellate court describes much of the dependency cases' procedural history and key evidence. 1-ER-6.

## IX. ROOKER-FELDMAN APPLIES TO INTRINSIC FRAUD

Should this Court deem it necessary to consider whether the SAC constitutes a *de facto* appeal of a state court decision, the opening brief provides incomplete analysis. According to the Miroths, this circuit enforces the *Rooker-Feldman* doctrine only if the complaint (a) expressly attacks the state court decision, or (b) asserts claims the state court decided. The Miroths emphasize the SAC's abandonment of the extrinsic fraud claim and the prayer for relief from the state court judgment (which the district court acknowledged), yet admit that, but for the County Defendants' misrepresentations and omissions, "the juvenile

court would not have issued the orders including the order terminating the [sic] Plaintiffs parental rights." OB-28. See 1-ER-8-9.

The opening brief wholly fails to justify its admission the SAC functionally asserts "the alleged errors of the state court as their legal injury." See further 1-ER-9. That the County Defendants supposedly caused those incorrect rulings does not circumvent *Rooker-Feldman* because:

(i) the SAC's express abandonment of the extrinsic fraud theory meant the Miroths no longer alleged County Defendants prevented them from contesting the pertinent facts, and thus cemented the theory of the case exclusively to intrinsic fraud[11] (1-ER-9-10); and

---

[11] See *Kougasian v. TMSL, Inc.*, 359 F.3d 1136, 1140 (9th Cir. 2004) (*Rooker-Feldman* does not bar extrinsic fraud claims); *Wood v. McEwen*, 644 F.2d 797, 801 (9th Cir. 1981) (perjury at a contested hearing constitutes intrinsic fraud, which does not serve as a basis for relief from a judgment); *Green v. Ancora-Citronelle Corp.*, 577 F.2d 1380, 1384 (9th Cir. 1978) [distinguishing extrinsic from intrinsic fraud in the context of issue preclusion]; *Castro v. Lewis*, 777 F. Appx. 401, 405 n.3 (11th Cir. 2019) ("we know of no court to have ever recognized an intrinsic fraud exception to the *Rooker-Feldman* doctrine").

37

(ii) the district court found the record shows the Miroths contested these issues in the dependency cases, meaning that "plaintiffs are in essence arguing the state court erred by incorrectly weighing the evidence before it" (1-ER-10).

In short, though the SAC does not openly seek relief from the juvenile court's rulings, the SAC necessarily paints those rulings as wrong and so constitutes a *de facto* appeal therefrom. As aptly remarked by the Eleventh Circuit regarding a similar *Rooker-Feldman* situation, "an [intrinsic fraud] exception could effectively gut the doctrine by permitting litigants to challenge almost any state-court judgment in federal district court merely by alleging that the other party lied during the state-court proceedings." *Valentine v. BAC Home Loans Servicing, L.P.*, 635 F. Appx. 753, 757 (11th Cir. 2015).

## X. NO AMENDMENT WAS OR IS PROPOSED

### A. APPELLANTS WAIVE THIS APPELLATE GROUND

The opening brief lists in both its [sic] "Issue Presented

For Review" and "Standards Of Review" sections the denial of leave to amend, but presents no other analysis or discussion of that matter. OB-7, 23. Accordingly, Appellants forfeit the question for lack of substantive treatment.

## B. THE REQUEST WAS IMPROPERLY GENERIC

Moreover, the record also shows the Miroths' *generically* requested leave to amend in the district court – they did not propose a specific new fact as curative. 2-ER-65-67. See *Salameh v. Tarsadia Hotel*, 726 F.3d 1124, 1133 (9th Cir. 2013) (after initial amendment, "[a] plaintiff may not in substance say 'trust me,' and thereby gain a license for further amendment when prior opportunity to amend had been given").

## XI. CONCLUSION

The Miroths either addressed, or could have contested, in the dependency proceedings each of the alleged misrepresentations/omissions. Those opportunities during the course of what became a final judgment after appeal formed the factual heart of County Defendants' successful

39

Rule 12(b)(6) challenge. This appeal tries to whitewash what occurred in both the state and district courts by excluding the relevant exhibits and avoiding their discussion, either in the context of *Rooker-Feldman* or issue preclusion.

On the analytical merits, the appeal fares no better because the Miroths do not, and cannot, cite authority that intrinsic fraud lies outside *Rooker-Feldman*'s jurisdictional confines.

Dated: February 15, 2024     ANGELO, KILDAY & KILDUFF

*/s/ John A. Whitesides*

By:_____

    JOHN A. WHITESIDES
    Attorney for
    Defendants/Appellees
    COUNTY OF TRINITY,
    LIZ HAMILTON, MARIO
    ANGELONE, NICOLE
    HAYS BRADFORD,
    ALLISON BALLARD,
    MEGAN SHOTLY-
    SCALZO, ANGELA
    BERGLUND, and ASHLEY
    POQUETTE

UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

**Statement of Related Cases Pursuant to Circuity Rule
28-2.6**

9th Cir. Case Number: 23-15759
The undersigned attorney states the following:

I am unaware of any related cases currently pending in this
court.

Dated: February 15, 2024

*/s/ John A. Whitesides*
_____

John A. Whitesides

## **CERTIFICATE OF COMPLIANCE**

Pursuant to Ninth Circuit Rules, I certify that Appellees' Answering Brief is proportionately spaced and has a typeface of 14 points in Century Schoolbook font.

The brief has a word count of 5,959 words.

Respectfully submitted,

Dated:  February 15, 2024

*/s/ John A. Whitesides*

_____

John A. Whitesides

UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

Certificate of Service for Electronic Filing
9th Cir. Case Number: 23-15759

I hereby certify that I electronically filed the foregoing/attached document(s) on this date with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit using the Appellate Electronic Filing system.

I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

Date: February 15, 2024

*/s/ Sarah Kelly*

_____

SARAH KELLY

43